[S. F. No. 6600.   In Bank.—February 11, 1915.]

WILLIAM J. KENNEDY, as Administrator of the Estate of Bartholomew Kennedy, Deceased, Respondent, v. MARY E. McMURRAY, Defendant and Cross-complainant, Appellant, WILLIAM J. McMURRAY, Defendant, and MUTUAL SAVINGS BANK of San Francisco (a Corporation), Respondent.

JOINT TENANTS—DEPOSIT IN SAVINGS BANK—AGREEMENT WITH BANK CREATING JOINT TENANCY — RIGHT OF SURVIVORSHIP. — Where a father and his daughter, at the time of opening a deposit account in a savings bank in the names of the father or the daughter, execute to the bank a written agreement as to the conditions of the deposit account in which they declare that "the sums deposited to this account are, and those sums hereafter to be deposited shall be, joint as to time, title, and possession, and further declare that they are not and have never been the separate property of either, and said sums are hereby made payable to either of us; and we hereby agree that the receipt of either of us shall be a full acquittance and discharge to the bank therefor," the effect of the agreement is to create a joint ownership or interest in both as to a deposit of his individual funds then made by the father, and deposits thereafter made with the bank, to which, as an incident of the joint ownership, the right of survivorship attached.

ID.—TRANSFER OF DEPOSIT TO JOINT ACCOUNT—EXCLUSIVE POSSESSION OF PASSBOOK—FORM PROVIDED BY BANK.—It is immaterial to the creation of such joint ownership that the initial deposit to such joint account was affected by a transfer by the father of a deposit then standing on the books of the bank in his individual name, or that he subsequently during his lifetime retained exclusive possession of the passbook, or that the agreement was contained in a written form provided by the bank in a measure to protect itself in making payments.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.   George E. Church, Judge presiding.

The facts are stated in the opinion of the court.

Guy C. Earl, and W. H. Spaulding, for Appellant.

Rufus Hatch Kimball, J. C. McKinstry, and D. C. Murphy, for Respondents.

LORIGAN, J.—This action was brought to determine diverse claims to $3240 and interest on deposit with the defendant bank.

The complaint averred that this deposit consisted of moneys of which the deceased, Bartholomew Kennedy, was the sole owner in his lifetime and which from time to time he deposited personally in the defendant bank and that such deposit was at the time of his death a part of his estate; that the defendant Mary E. McMurray asserted a claim to said deposit as her separate property which asserted claim was without right; that both plaintiff and said defendant Mary E. McMurray had demanded payment thereof from the bank separately and that by reason of said different and conflicting claims thereto the bank had refused to pay the deposit to either. Plaintiff asked for a judgment determining that said Mary E. McMurray had no right or interest in said deposit and against the bank requiring it to pay over said deposit to plaintiff.

The defendant Mary E. McMurray filed an answer and cross-complaint. In her answer she denied that her claim to said deposit was without right and asserted that it was her sole and separate property. In her cross-complaint she averred that prior to her marriage to the defendant William J. McMurray (and as he filed a disclaimer of any interest in the deposit he may therefore be eliminated from this action) her name was Mary E. Kennedy, also called May E. Kennedy; that on July 26, 1902, said Bartholomew Kennedy, who was her father, and herself opened an account with the defendant in the names of "Bartholomew Kennedy or May E. Kennedy" and then and there said Bartholomew Kennedy deposited with said bank three thousand dollars, which sum was deposited by him in the names of "Bartholomew Kennedy or May E. Kennedy"; that thereafter during his lifetime other moneys were deposited by said Bartholomew Kennedy and certain moneys were withdrawn from said account by him and at the death of said Bartholomew Kennedy there was on deposit in said bank in the names of said "Bartholomew Kennedy or May E. Kennedy" the sum of money mentioned in the complaint. The cross-complaint then proceeded to aver that said account was so opened and said original deposit of three thousand dollars and all moneys thereafter deposited therein on the understanding and agreement made and entered into be-

tween said defendant bank and said Bartholomew Kennedy and the defendant Mary E. Kennedy that any and all moneys deposited in said account should be held by said defendant bank in trust upon the following terms: "that all moneys . . . at any time deposited or on deposit . . . in said account were to be paid by said bank upon the order at any time of either said Bartholomew Kennedy or this defendant and upon the death of either said Bartholomew Kennedy or this defendant any and all moneys then at the time of such death on deposit in said account . . . should be the sole and separate property of the survivor of said two persons, to wit, said Bartholomew Kennedy and this defendant and to be payable by said Mutual Savings Bank of San Francisco to such survivor as his or her, as the case might be, sole and separate property"; and that as the survivor of said two persons defendant is the owner of said deposit. It is then alleged that the claim made by the plaintiff as administrator of the estate of said Bartholomew Kennedy, deceased, to the money on deposit is invalid, that the estate of said deceased has no interest therein but that said money is the sole and separate property of the defendant and cross-complainant. Her prayer was that it be decreed that said property is the sole and separate property of the defendant and for a judgment against the bank requiring it to pay over to her said deposit.

Plaintiff by answer denied the averments of the cross-complaint. The defendant bank filed an answer to both the complaint and cross-complaint and on information and belief denied that the deceased, Kennedy, was the sole owner in his lifetime of the moneys deposited with it or that they were the sole and separate property of the cross-complainant. It was conceded by both sides on the trial that the bank was a mere stakeholder in this matter.

The trial court made general and special findings. It found generally that the allegations of the complaint were true; and that the denials in the answer of the defendant Mary E. McMurray were untrue. It found specially that the cross-complainant did not at any time open an account with the defendant bank as alleged by her, but that the account referred to by her in said pleading was opened by said Bartholomew Kennedy and the title of said account opened on the books and records of the bank was "Bartholomew Kennedy or May E. Kennedy"; and that none of the moneys deposited in said

account were ever deposited upon any trust agreement or understanding as set up in the paragraph of the cross-complaint averring that fact. The court then proceeding made what will be designated as special finding No. 6 in which it found "that the only agreement which the defendant bank ever made with said Bartholomew Kennedy in respect to said deposits of money was reduced to writing and was signed by him and said Mary E. McMurray, then May E. Kennedy, and that said agreement so reduced to writing consisted of two separate documents as follows:

"Conditions of deposit account No. 11233.

"San Francisco, Jul. 26, 1902.

"We, the undersigned, each for himself and not one for the other, declare that the sums deposited to this account are, and those sums hereafter to be deposited shall be, joint as to time, title and possession, and further declare that they are not and have never been the separate property of either, and said sums are hereby made payable to either of us; and we hereby agree that the receipt of either of us sh—ll be a full acquittance and discharge to the Mutual Savings Bank of San Francisco therefor.

"BARTHOLOMEW KENNEDY.
"MARY E. KENNEDY.

"Witness:

"W. H. CAMERON."

"Depositors subscriptions to conditions of agreement   }   No.
with the Mutual Savings Bank of San Francisco.   } 11233

"Jul. 26, 1912.

"We hereby agree to be governed by the by-laws, copy of which is in our passbook, in regard to all deposits we may have with the Mutual Savings Bank of San Francisco.

"Payable to the individual order of either.

"Signature BARTHOLOMEW KENNEDY.
"Signature MAY E. KENNEDY."

As conclusions of law from the facts found the trial court held that the defendant and cross-complainant Mary E. Mc-Murray had no right to or interest in said deposit and gave plaintiff judgment against the defendant bank for the sum of three thousand two hundred and forty dollars with interest from January 1, 1910.

Defendant and cross-complainant appeals from the judgment and an order denying her motion for a new trial.

On the appeal from the judgment the contention of the appellant is that special finding No. 6 is controlling in the case; that the trial court should have determined as matter of law therefrom that appellant was the owner of the deposit in controversy and given her judgment accordingly.

In this regard her claim is that as a joint ownership or interest in personal property, including a deposit in a savings bank, may be created to which the incident of survivorship attaches (*Denigan* v. *San Francisco Sav. Union*, 127 Cal. 142, [78 Am. St. Rep. 35, 59 Pac. 390]), the clear legal effect of the instruments specially found by the court to have been executed by appellant and her father at the time the deposit was made was to create a joint ownership or interest in both as to the deposits then made by her father, and deposits thereafter to be made with the defendant bank; that as an incident to this joint ownership the right of survivorship attached and appellant being the survivor of the joint owners was entitled to the deposit and the court should, under the special finding referred to, have so held.

We are satisfied that this contention of appellant must be sustained. We are cited by respective counsel to cases in our courts which it is claimed announce principles under which a proper construction of the instruments executed when the deposit here involved was made is to be reached, but we do not think that any of them have particular application to the subject. These cases are *Booth* v. *Oakland Bank of Savings*, 122 Cal. 19, [54 Pac. 370]; *Carr* v. *Carr*, 15 Cal. App. 480, [115 Pac. 261]; *Drinkhouse* v. *German Sav. & Loan Soc.*, 17 Cal. App. 162, [118 Pac. 953]; *Denigan* v. *Hibernia Sav. & Loan Soc.*, 127 Cal. 137, [59 Pac. 389]; *Robinson* v. *Mutual Sav. Bank*, 7 Cal. App. 642, [95 Pac. 533]; *Estate of Hall*, 154 Cal. 527, [98 Pac. 269]. In those cases the question was presented, in one form or another, as to who was entitled to a deposit in a savings bank where a deposit account had been opened on the books of the bank by a depositor in his own name "or" that of another, or where the deposit was entered on the books of the bank to the "joint account" of the depositor and another person, or the question was whether the deposit was made in trust for the benefit of another. The actions were brought either by the survivors to the deposit account or the beneficiaries under the alleged trust. But on examination of those cases it will be observed that in none

of them was there any written instrument executed by the parties in whose names the account stood in the bank declaring their rights or interests respecting the deposit, or the terms under which it was made and was to be held by the bank. In the cases referred to the terms of the deposit consisted simply of an entry in the passbook and an entry in the records of the bank. No written instrument was executed between the parties to the deposit and accompanying its making. So that in the mentioned cases the question was as to the intention of the depositor in making the deposit in the form he did; whether he intended to make a gift, or create a joint interest in the deposit with right of survivorship, or to establish a trust as to any balance on deposit at his death. In the absence of any written instrument clearly disclosing his intention in those respects such intention was open to inquiry and to be determined from all the facts and circumstances connected with the deposit. The whole matter rested in parol and whether, as asserted in the Denigan case, it was the intention of Mrs. Denigan in having a deposit entered in the books of the bank and in her passbook in the names of "Frank Denigan or Ellen Denigan" to thereby create a joint interest or ownership in the deposit to which the incident of survivorship would attach, or in the Carr case whether it was the intention of Michael Carr by changing his deposit on the books of the bank to the names of Michael or M. K. Carr as "joint owners" payable to either or the survivor, thereby to create a trust in favor of M. K. Carr, the survivor, was a question open to determination from a consideration of all of the facts surrounding the making of the deposit. In none of the cases cited could the mere fact of deposit and the entry in the books of the bank be conclusive of the matter of intention. It was accompanied by no written declaration of the depositor which could be taken as determining his intention respecting it and hence, as the question was an open one, it was for the court to determine the intention from all the facts and circumstances proven in the case. But in the case at bar we have a written declaration signed by the father and his daughter relative to the deposit declaring the character of the property then deposited or which might thereafter be deposited, the interest which both have and are to have in it and fixing their rights respecting it. It is true that there was evidence in the case showing that prior to making this particular deposit

the money constituting it was money which Mr. Kennedy had already on deposit with the bank in his own name. It was at that time his individual property. When the written instruments were executed by himself and his daughter and as part of the transaction he had this money transferred from his account on the books of the bank and deposited in the names of himself or the appellant. The prior ownership by the father of this money, however, is a circumstance of no importance if the written instruments declare and disclose a purpose and intent on his part in having the old deposit transferred to the new deposit account to thereby give his daughter a joint interest with him in it. It was his property and he could do with it as he pleased. We are not aware of any code provision or principle of law which would prevent him by this transfer of deposits from his sole account to a joint account from giving her a joint interest or making her a joint owner with him in the latter deposit. Whether he intended to do so or not is the essential element in the case and if that clearly appears from the instruments executed by him and his daughter when he made the deposit in their names we cannot look beyond those instruments. If it is clear on the question of intent the right of the parties must be determined solely from its consideration. No parol evidence could affect it.

Coming now to a consideration of the instrument. While it consists of a mutual declaration of the father and the daughter as to the deposits, the particular question is, Does it clearly disclose an intention on the part of the father when the deposit was made by him to the account of himself and his daughter to constitute it and future deposits the joint property of himself and her? We do not perceive how any other reasonable construction can be given to the instrument than that he did. The written declaration as applying to him says so in express terms. The moneys were his before the deposit account was opened. He declares that as deposited by him it is not his separate property but the joint property of himself and his daughter; "that the sums deposited to this account are, and other sums hereafter to be deposited shall be joint as to time, title and possession." There is no ambiguity or uncertainty about this language. It was undoubtedly intended to and did create a joint interest or ownership in the deposit and this being the intention and as the right of survivorship applies to joint interests or ownership of personal

property it must have been the intention of the deceased Kennedy in declaring the deposit to be joint property to have intended that the incident which follows joint ownership should apply to it and that upon his death his daughter should take the deposit as survivor. Certainly, more apt language whereby a joint ownership in the deposit or a right to the withdrawal of it (because the legal title to the money deposited was in the bank and the relation of debtor and creditor between Kennedy and appellant and the bank was created by the deposit) could not have been employed than is used in the instrument in question. It was unnecessary to accompany the creation of the joint ownership with a declaration respecting survivorship. That followed as a legal incident to the creation of the joint interest, a matter which Kennedy must be held to have known and intended to effect by the clear creation of the joint interest between himself and appellant in the deposit.

As against such a conclusion from the terms of the instruments it is insisted by respondent that they were simply forms prepared by the bank to protect it in its payments to either of the two parties regardless of their rights as between themselves and had nothing to do as affecting the relations between themselves concerning the moneys deposited; that further, the deceased Kennedy by the terms of the instruments retained the right to draw against the deposit and so exhaust it, and likewise himself retained the passbook without the production of which at the bank the appellant would be unable to draw any of the funds; and that these matters are inconsistent with an intention on the part of Kennedy to create a joint ownership between himself and appellant in the deposit with the right of survivorship. No doubt but that as claimed by respondent this form was provided by the bank in a measure to protect itself in making payments. But taking into account the well-known fact that deposit accounts are largely opened with savings banks, particularly between husband and wife and near relations for the express purpose of having the amount remaining on deposit in such bank go on the death of one of the parties to the survivor, this form was doubtless provided by the defendant savings bank here for execution by depositors wishing to do this and as legally sufficient to effect that intention. As to the other matters suggested we do not see how they can have any bearing to defeat the intention clearly ap-

pearing from the instruments that the deposit should be the joint property of the parties to it. There was no exclusive right to draw on the deposit retained by the deceased Kennedy by the terms of the written instruments. On the contrary, thereunder both he and appellant had an equal right to do so. Instead of being inconsistent with an intention to create a joint ownership in the deposit this right of withdrawal extending fully to either party to the deposit would rather tend to sustain such an intention. Nor could the fact (which would be a matter outside of the terms of the agreement respecting the deposit if proven) that the deceased Kennedy retained exclusive control of the passbook during his lifetime affect the terms of the instrument. As said in *Farrelly* v. *Immigrant Industrial Sav. Bank,* 92 App. Div. 529, 87 N. Y. Supp. 54: "Where, however, the deposit is in joint names, and the intent appears to create the joint tenancy, its effect is to vest title to the whole fund in the survivor; and under such circumstances, whether the book be delivered to the survivor or not, or whether he ever has had it in his possession during the lifetime of his joint owner, is not of consequence, as the intent existing to create the relation of a joint tenancy title vested in the survivor *eo instanti* upon the death of the joint owner, and no delivery of anything is necessary to effectuate such result."

In our opinion the instrument executed by the deceased Kennedy and the appellant in opening the account with the bank clearly constituted the moneys deposited therein and in controversy here the joint property of both of them and vested in the appellant as survivor of such joint ownership all interest therein and the sole right to withdraw them. The court found specially as to the execution of these papers but found generally that Kennedy was the owner of the deposit at his death. This general finding is controlled by such special finding and on it the trial court should have reached a conclusion in favor of the right of appellant to a recovery. Reaching this conclusion on the appeal from the judgment it is unnecessary to consider the appeal of appellant from the order denying her motion for a new trial.

Our order is that the judgment and order denying a new trial be reversed; that the trial court set aside its conclusions of law and draw others in conformity with the conclusion reached in this opinion; and that thereon a judgment be entered in favor of appellant on her cross-complaint for the

recovery from the defendant bank of the sum of three thousand two hundred and forty dollars and interest thereon.

Shaw, J., Melvin, J., Henshaw, J., and Angellotti, C. J., concurred.