### In re DALSIMER'S ESTATE.

#### DALSIMER v. STATE COMPTROLLER. (No. 7140.)

(Supreme Court, Appellate Division, First Department. May 7, 1915.)

1. TAXATION ☞866—TRANSFER TAXES—JOINT OWNERSHIP.

A husband, having deposited stocks and bonds in his name with a trust company for safe-keeping, directed that the old certificates be surrendered and new ones issued to himself and wife as joint tenants, with the right of survivorship, and that each should have control over the property and the proceeds. *Held*, that as, at the husband's death, neither

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

had exclusive title, but both had unity of possession, unity of interest, and unity of title, with the right of survivorship, transfer taxes could not be imposed; the death merely fixing which joint tenant should take the whole.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. ☞866.]

2. APPEAL AND ERROR ☞151—PERSONS ENTITLED TO APPEAL—EXECUTOR.

An executrix may appeal in that capacity from an order assessing transfer taxes, though she be the only one individually interested in the estate.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 947–952; Dec. Dig. ☞151.]

Appeal from Surrogate's Court, New York County.

On judicial settlement of the estate of Samuel Dalsimer, deceased. From an order of the Surrogate's Court (148 N. Y. Supp. 914), assessing a transfer tax, Zettie Dalsimer, as executrix, etc., appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Louis J. Vorhaus, of New York City, for appellant.

Alexander Otis, of New York City, for respondent.

McLAUGHLIN, J. Appeal by the executrix of the estate of Samuel Dalsimer, deceased, from so much of an order of the Surrogate's Court as assessed a transfer tax upon the value of certain stocks and bonds. The decedent, a resident of the state of New York, died on the 30th of July, 1913, leaving a will in which his wife was named as sole beneficiary. At the time of his death certain stocks and bonds of the value of $292,346.50 were held by the Guaranty Trust Company of New York for safe-keeping in an account entitled "Samuel Dalsimer and Zettie Dalsimer, as Joint Tenants, with the Right of Survivorship, and Not as Tenants in Common." The only question presented by the appeal is whether these stocks and bonds, or any of them, were properly held subject to the payment of a transfer tax.

For some years prior to 1911 the decedent had an account with the Trust Company for the deposit of stocks and bonds. On February 15th of that year the account was changed from an individual account of the decedent to a joint account for himself and wife, and dividends on the stocks and interest upon the bonds were thereafter collected by the Trust Company and deposited in a bank account in the Trust Company which stood in the name of "Samuel Dalsimer or Zettie Dalsimer." Either party had the right to draw upon the account, which they, in fact, did from time to time. There is no evidence of an agreement between the decedent and his wife at the time the securities' account was opened, but on April 18, 1912, they delivered to the Trust Company a communication of which the following is a copy:

"July 18, 1912.

"Guaranty Trust Company of New York—Dear Sirs: We hereby request that all securities and money now held or hereafter received by you for our account, or for account of either of us, and the proceeds of any such securities, shall be held for the joint account of the undersigned, acting jointly and

severally as joint tenants, and not as tenants in common, with all the rights that such joint and several relation can confer on either of us, and particularly with the right to each of us at any time to withdraw or otherwise dispose of the same, or any part thereof, without the act or co-operation of the other, and, upon the death of one of us, the survivor to be the sole owner of the securities and moneys remaining to the credit of said account. During our joint lives, the written directions of either of us shall be ample authority to you in relation to the said joint account. * * *

"Yours truly,                                    Samuel Dalsimer,
                                                 "Zettie Dalsimer."

Thereafter, and until the death of the decedent, the securities in question were held by the Trust Company, pursuant to this communication, in an account entitled "Samuel Dalsimer and Zettie Dalsimer, as Joint Tenants, with the Right of Survivorship, and Not as Tenants in Common." Prior to June, 1913, most of the stock certificates stood in the name of Samuel Dalsimer and were by him indorsed in blank. The bonds were payable to bearer. In that month, however, the stocks were transferred to and registered in the name of "Samuel Dalsimer and Zettie Dalsimer, as joint tenants, with the right of survivorship, and not as tenants in common," and they were so registered at the time of the decedent's death.

The learned surrogate held that the money standing to the credit of the joint bank account was not taxable, but inasmuch as it did not appear that any of the stocks and bonds in question were purchased with money belonging to the testatrix, therefore the right of survivorship conferred upon her by the creation of the joint account was a gift by the decedent, intended to take effect in possession or enjoyment after his death within the meaning of subdivision 4 of section 220 of the Tax Law, and hence subject to a tax.

[1] It seems to me to be unnecessary to consider to what extent, if any, the decedent's wife contributed to this joint account, either in money or securities, since they could create a joint ownership therein, irrespective of what each contributed, with the right of survivorship. Kelly v. Beers, 194 N. Y. 49, 86 N. E. 980, 128 Am. St. Rep. 543; West v. McCullough, 123 App. Div. 846, 108 N. Y. Supp. 493, affirmed 194 N. Y. 518, 87 N. E. 1130. That the securities in question were held in a joint account, and were intended to be so held, was conclusively established by the communication of July 18, 1912, signed by the decedent and his wife, to which reference has already been made. The title to such securities was in them as joint tenants, and from that time until the decedent's death neither he nor his wife had the exclusive title; on the contrary, each had a "unity of interest, unity of title, unity of time, and unity of possession" (17 Am. & Eng. Enc. of Law [2d Ed.] 649)—all the essentials necessary to create a joint tenancy, and which, once created, carried with it the right of survivorship. It is by reason of this right that it has been held that the interest of a joint tenant is not descendible and cannot be devised by will. No right passes by the death of one of the joint tenants, and its only effect is to vest the entire title in the survivor. Farrelly v. Emigrant Industrial Sav. Bank, 92 App. Div. 529, 87 N. Y. Supp. 54, affirmed 179 N. Y. 594, 72 N. E. 1141. In other words, the only question determined by the death is which of the joint tenants takes the whole. If

this be true, then it follows there is nothing upon which a tax can be imposed, for the transfer of the title was not made in contemplation of death. In support of this view, see Matter of Tilley, 151 N. Y. Supp. 79.

[2] It is also urged by the respondent that the appellant as executrix is not aggrieved by the order assessing a transfer tax and hence her appeal raises no question. The notice of appeal does not, necessarily, purport to be an appeal by the executrix. The use of the word "executrix," it might be urged, is merely descriptive; but, assuming that the appeal is taken by her as executrix, we think she had a right to appeal. In Matter of Cornell, 66 App. Div. 162, 73 N. Y. Supp. 32, it was held that:

"The executor, as such, is entitled to appeal from an order and decree fixing a transfer tax. He is made personally liable for the tax, * * * and is a party aggrieved within the meaning of the provisions of the Code of Civil Procedure relating to appeals."

The Court of Appeals modified the order of the Appellate Division (170 N. Y. 423, 63 N. E. 445), and in doing so I think necessarily held that the appeal was properly taken by the executor.

But, independent of authority, it must be that an executor of an estate against which a transfer tax has been imposed' has such an interest therein as entitles him to have an order imposing the tax reviewed on appeal.

It follows that the order, in so far as appealed from, must be reversed, with $10 costs and disbursements, and the appraiser's report modified, by deducting the transfer tax imposed upon the securities under review. All concur.